## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**EDWARD SLAPPY**
**Individual,**

|  |  |
|---|---|
| Plaintiff, | Case No.: 19-cv-10171 |
|  | Hon. Victoria A. Roberts |

v.

**ERIC CARTHAN, ERIC BROMLEY,**
**RANDOLPH WILLIAMS, TERRY BONDS,**
**in their individual and official capacities and**
**CITY OF DETROIT, Jointly and Severally,**

Defendants.

---

**DAVID A. ROBINSON (P38754)**
**BRANDON MCNEAL (P81300)**
**ROBINSON AND ASSOCIATES, P.C.**
Attorney for Plaintiff
28145 Greenfield Rd., Suite 100
Southfield, MI 48076
(248) 423-7234
davidrobinsonlaw@gmail.com

**KRYSTAL A. CRITTENDON (P49981)**
**ALFRED ASHU (P82536)**
**CITY OF DETROIT LAW**
**DEPARTMENT**
Attorneys for Defendants
Coleman A. Young Municipal Center
2 Woodward Ave., Ste. 500
Detroit, MI 48226
(313) 237-3031
Alfreda@detroitmi.gov

**THOMAS E. KUHN (P37924)**
Co-Counsel for Plaintiff
645 Griswold Street. Ste. 1900
Detroit, MI 48226
(313)  963-5222
tekuhn@aol.com

---

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**NOW COMES** Plaintiff Edward Slappey, by and through counsel, and in his Response in opposition to Defendants' Motion for Summary Judgment states as follows.  Plaintiff does not have or wish pursue the following claims:

 MUNICIPAL LIABILITY AGAINST DEFENDANT CITY OF DETROIT

42 USC § 1983 CLAIMS AGAINST DEFENDANT BONDS

EXCESSIVE FORCE CLAIMS AGAINST DEFENDANT CARTHAN

STATE TORT CLAIMS OF GROSS NEGLIGENCE AND INTENTIONAL

INFLICTION OF EMOTIONAL DISTRESSS

Plaintiff does contest Defendants' Motion to Summary Judgment on his Fourth Amendment Claim of Wrongful Seizure/Search against Defendants Carthan, Bromley, and Williams, his First Amendment Claim of Retaliation against Defendants Carthan, Bromley, and Williams and State Tort claims of False Arrest and False Imprisonment against Defendants Carthan, Bromley, and Williams.

In his Response in opposition to Defendants' Motion for Summary Judgment, Plaintiff states as follows

1. Admitted that this is a 42 USC 1983 lawsuit in which Plaintiff alleges that his First, Fourth and Fourteenth Amendment rights were violated by members of the Detroit Police Department.

2. Admitted.

ii

3. Admitted.

4. Denied as untrue. There is sufficient admissible evidence to deny the

5. Denied as untrue.

6. Denied as untrue

7. Admitted.

8. Admitted.

WHEREFORE, Plaintiff respectfully requests that this Court deny the

Motion for Summary Judgment brought by Defendants Carthan, Bromley,

Williams. Plaintiff stipulates to the dismissal of claims against Defendants

Bonds and City of Detroit.

Respectfully Submitted,

/s/ David A. Robinson
David A. Robinson (P 38754)
Thomas E. Kuhn (P37924)
Brandon McNeal (P81300)
Attorneys for Plaintiff
davidrobinsonlaw@gmail.com

iii

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

1. Admitted.

2. Qualified. While walking to Telway Restaurant, Plaintiff's right foot was struck by an unknown driver as he crossed the street (Ex. 1, 2017 Criminal Trial Transcript, 61:1-16)

3. Denied as untrue.  Plaintiff simply ordered food, paid for the food, used the restroom, and then asked "where his food was" (Ex. 2, June 20, 2019 Criminal Trial Transcript, 16: 3-23).

4. Denied that Plaintiff was asked by the Telway staff to leave the location (Ex. 2, June 20, 2019 Criminal Trial Transcript, 17: 12-16).

5. Qualified. At approximately 3:15 a.m. Defendant Bromley and Carthan arrived at the Telway restaurant, briefly spoke with an employee, asked Plaintiff to leave without explanation, and Plaintiff complied (Ex. 3, Bromley First Bodycam at 0:00:44- 0:00:55).

6. Qualified. During his initial encounter with Defendants Bromley and Carthan, Plaintiff does not have visible lacerations and bruises on both sides of his face. (Ex. 3, Bromley First Bodycam, Ex. 4, Carthan Deposition, p. 27-28, Ex. 5, Slappey Affidavit)

iv

7. Admitted.

8. Qualified. At that point in the Bodycam, Defendant Carthan did advise Plaintiff that he was under arrest but conducted an illegal frisk without any reasonable suspicion that Slappey was armed and dangerous (Ex. 3, Bromley First Bodycam at 0:01:20).

9. Denied as untrue as Plaintiff knew exactly where his home was. In fact, Plaintiff provided Defendant Carthan and Bromley with the addresses of his residences, one on Ewald Circle and another on Philip St. Plaintiff did indicate that he wanted to go home and denied needing any medical treatment because he did not have any injuries at that point besides some minor knee swelling (Ex. 3, Bromley Bodycam 226 at 0:08:18-0:08:30, Ex. 5, Slappey Affidavit).

10. Qualified. Plaintiff did request to be driven home but Officers refused (Ex. 3, Bromley First Bodycam at 0:08:30-0:08:40, Ex. 5, Slappey Affidavit)

11. Admitted.

12. Denied that Plaintiff was causing a disturbance. Plaintiff simply went to the pick-up window to receive the food that he already paid for (Ex. 2, Plaintiff's Testimony June 20, 2019 Criminal Trial Transcript, 18:5-13, Ex. 5, Slappey Affidavit).

13. Denied as untrue. Defendant Officers placed Plaintiff under arrest by handcuffing him and placing him in the backseat of a police vehicle before dropping him off in a dimly lit neighborhood behind Motor City Casino. (Ex. 6, Bromley Second Bodycam at 0:00:00-0:00:59, Ex. 7, Carthan Dropoff Bodycam at 00:00:00-0:02:07).

14. Denied as untrue that facial injuries were visible on Plaintiff. (Ex. 7, Carthan Drop-off Bodycam 180 at 00:00:00-0:02:07) (Ex. 4., Carthan Deposition, p. 27-28)

15. Admitted. (Ex. 7, Carthan Drop-off Bodycam at 00:00:00-0:02:07)

16. Denied as untrue. Defendant Carthan entered the police vehicle and drove off and Defendant Bromley is not shown getting back in the police vehicle (Ex. 7, Carthan Drop-off Bodycam at 00:00:00-0:02:07).

17. Denied as untrue. (Ex. 7, Carthan Drop-off Bodycam at 00:00:00-0:02:07)

18. Qualified. Plaintiff walked to the Motor City Casino after regaining consciousness and told Defendant Williams that he had been assaulted and requested medical treatment. (Ex. 1, 2017 Criminal Trial Transcript, 66:19-25, 67:1-2, Ex. 5, Slappey Affidavit)

19. Qualified. Plaintiff told Officer Williams that the Detroit Police Officers threw him in the back of a police car, assaulted him and dropped him off in the street. Plaintiff does not use the word "then" as indicated by Defendants

and never indicated the order of events. (Ex. 8, Williams Rear Passenger Dash Cam (Casino) at 0:05:16).

20. Qualified. Defendant Williams drove Plaintiff back to the Telway but Plaintiff's vehicle was located at Freer's bar.  (Ex. 2, June 20, 2019 Criminal Trial Transcript, 38: 5-6)

21. Admitted.

22. Denied as untrue. Defendant Williams eventually took Plaintiff to Detroit Receiving Hospital (approximately 2 hours after requesting medical treatment) but he is never caught on video being combative or refusing medical treatment. (Ex. 9, Williams Rear Passenger Dash Cam (Hospital) at 0:00:00 - 0:06:37).

23. Denied as untrue. Plaintiff never became disorderly in the hospital although Defendant Williams arrested Plaintiff on disorderly conduct charges. Plaintiff was found not guilty of the disorderly conduct after a jury trial. Defendant Williams arrested Plaintiff after Plaintiff complained about Defendant Williams interrupting his intake questioning with the nurse and asking Williams "Now you believe me? Now you want to do your fucking job?" (Ex. 9, Defendant Williams Rear Passenger Dash Cam (Hospital) at 0:00:00 - 0:06:37)(Ex. 2, June 20, 2019 Criminal Trial Transcript, 48: 1-14)(Ex. 5, Slappey Affidavit).

24. Admitted.

25. Qualified. Plaintiff admitted that at some points of the video footage, injuries were "kind of visible" (Ex. 10, Slappey's Audio Statement to Internal Affairs at 0:01:29-0:01:41).

26. Qualified. Plaintiff makes it clear that the officers did not assault him **on video** but he later makes clear that he knows he was assaulted and IA Interviewer Juan Ayala agrees that it was clear that Plaintiff was assaulted. (Ex. 10, Plaintiff's Audio Statement to Internal Affairs at 0:01:53-0:02:02 and 0:06:24-0:06:57).

27. Qualified. Plaintiff admits that he remembers "bits and pieces of being assaulted" and admits that he could have made a "mistake of putting everything together." (Ex. 10, Plaintiff's Audio Statement to Internal Affairs at 0:01:53-0:02:02 and 0:06:24-0:06:57).

Respectfully Submitted,

/s/ David A. Robinson
 David A. Robinson (P 38754)
Thomas E. Kuhn (P37924)
Brandon McNeal (P81300)
Attorneys for Plaintiff
davidrobinsonlaw@gmail.com

# **TABLE OF CONTENTS**

Plaintiff's Response to Defendants' Motion…………………………………… ii

Plaintiff's Response to Defendants' Statement of Material Facts……………... iv

Table of Contents ................................................................................. ix

Table of Authorities ............................................................................. x

Statement of Most Appropriate Authority ........................................... xiii

Statement of the Issues Presented ....................................................... xiv

I.     Statement of Facts ....................................................................... 1

     A. Plaintiff Edward Slappey………………………………………………… 1

     B. First Encounter Between Slappey and Carthan/Bromley……………… 1

     C. Second Encounter Between Slappey and Carthan/Bromley…………… 3

     D. The Drop-Off and Assault……………………………………………… 4

     E. Defendants' "Courtesy Conveyance" Claim Is a Heavily Contested
Factual Issue ……………………………………………………………… 5

     F. Interactions Between Slappey and Williams at MotorCity Casino, Telway,
Freer's Bar and Detroit Receiving Hospital……………………………... 6

     G. Plaintiff's Damages……………………………………………………... 9

III.   Argument……………………………………………………………………... 9

     A. Standard of Review………………………………………………………9

     B. Defendants Are Not Entitled to Qualified Immunity- 4th Amendment
Wrongful Seizure Claims………………………………………………… 10

          i.    Fourth Amendment Wrongful Seizure by Carthan/Bromley…… 12

          ii.   Fourth Amendment Wrongful Seizure by Williams…………… 15

     C. Defendant Bromley Not Entitled to Qualified Immunity- 4th Amendment
Excessive Force Claim…………………………………………………… 16

     D. Defendants Are Not Entitled to Qualified Immunity- 1st Amendment... 19

          i.    First Amendment Retaliation by Carthan and Bromley………… 21

          ii.   First Amendment Retaliation by Williams……………………... 22

     E. Defendants Not Entitled to Immunity for Plaintiff's State Law Tort
Claims……………………………………………………………………… 23

          i.    Question of Fact: Bad Faith…………………………………… 23

          ii.   Question of Fact: State Claims………………………………... 25

IV.   Conclusion ..................................................................................... 25

INDEX OF EXHIBITS………………………………………………………… 26

Certificate of Service .......................................................................... 27

# TABLE OF AUTHORITIES

*Adams v. Metiva*, 31 F3d 375, 386 (6th Cir. 1994) ............................................... 17, 19

*Anderson v Liberty Lobby*, 477 US 242 (1986) ........................................................ 10

*Bell v Bladder*, 175 F3d 278 (6th Cir. 1999)…………………………… ..xiii, 19, 20

*Bloch v Robar*, 156 F3d 673 (6th Cir. 1998)……………………… xiii, 19, 20, 21

*Burgess v Fischer*, 755 F3d 462 (6th Cir. 2013)…………………………………. 11

*Comstock v McCrary*, 273 F3d 693 (6th Cir. 2001) .................................................... 20

*Dickerson v McClellan*, 101 F3d 1151 (6th Cir. 1196) ............................................... 17

*Feyz v Mercy Memorial Hosp*., 475 Mich. 663 (2006) ............................................... 24

*Fridley v Horrighs*, 291 F.3d 867 (6th Cir. 2002)…………………………………11

*Friedman v. Dozorc*, 412 Mich 1, 312 NW2d 585 (1981) .......................................... 24

*Graham v. Connor*, 490 U.S. 386, 394 (1989) ...............................................xiii, 16, 19

*Green v. Barber*, 310 F3d 889 (6th Cir.2002)………………………………….. 19, 22

*Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012)………………………10, 11

*Gregory v City of Louisville*, 414 F3d 725 (6th Cir. 2006) ...................................... xiii

*Klein v Long*, 275 F.3d 544, (6th Cir. 2002)……………………………………….11

*Kostrzewa v. Troy*, 247 F3d 633 (6th Cir. 2001) ......................................................... 16

*Lapoint v UAW Local 600*, 8 F3d 376 (6th Cir. 1993) ................................................ 10

*Matsushita Elec v Zenith*, 475 US 574 (1986)............................................................. 10

*McDowell v. Rogers*, 863 F2d 1302 (6th Cir. 1988) ........................................... 17, 19

## <u>TABLE OF AUTHORITIES</u>

*Miller v Sanilac Cty.*, 606 F3d 240 (6th Cir. 2010……………………………11, 24

Minnesota v. Dickerson, 508 U.S. 366 (1993)…………………………………14

*Moore v. City of Detroit*, 252 Mich. App. 384, 652 N.W.2d 688 (2002)................... 25

*Odom v Wayne Cty.*, 482 Mich. 459 (2008) ......................................................... 23, 24

*Parsons v. City of Pontiac,* 533 F.3d 492 (6th Cir. 2008)………………….. ……11

*Phelps v Coy,* 286 F3d 295 (6th Cir. 2002) ...................................................... 16, 17, 19

*Ross v Consumers Power*, 420 Mich. 567 (1984)...................................................... 23

*Sandul v Larion*, 119 F.3d 1250 (6th Cir. 1997)………………………………12, 14

*Saucier v Katz*, 533 US 194, 202 (2001) ............................................................... 10, 11

*Smith v. Stolberg*, 231 Mich. App. 256, 260; 586 N.W.2d 103 (1998) ...................... 25

*Soldal v Cook Cty*, 506 US 56 (1992)....................................................................... xiii

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir., 2010) ..................................................... xiii

*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)…………………………………10

*U.S. v Diebold*, 369 US 654 (1962) .......................................................................... 10

*U.S. v Ferguson*, 8 F3d 385 (6th Cir. 1993) ............................................................. xiii

*U.S. v. Reed*, 2000 WL 665398 (6th Cir. May 23, 2000)………………….........14

## Statutes/ Court Rules/ Other Authorities

Federal Rules of Civil Procedure................................................................................9

# <u>TABLE OF AUTHORITIES</u>

Mich. Civil JI…………………………………………………………………...24

MCL 691.1407(3)……………………………………………………………….23

## STATEMENT OF MOST APPROPRIATE AUTHORITY

In Fourth Amendment search and seizure qualified immunity questions, the issue is probable cause and that should typically be left to the jury.  *Soldal v Cook Cty*, 506 US 56 (1992); *U.S. v Ferguson*, 8 F3d 385 (6th Cir. 1993); *Gregory v City of Louisville*, 414 F3d 725 (6th Circuit, 2006);

In First Amendment cases, Plaintiffs must show that he was engaged in protected speech when he spoke to Defendants, that part of the reason for the arrests, seizures, citations was retaliation for his protected speech. *Bell v Bladder,* 175 F3d 278 (6th Cir. 1999); *Bloch v Ribar*, 156 F.3d 673 (6th Cir. 1998).

The Fourth Amendment to the United States Constitution provides for the right to not be deprived of life or liberty without due process of law and not to be subjected to excessive force. The use of force must be objectively reasonable.  An officer shall only use that force which a reasonably prudent officer would use under the similar circumstances.  See, *Graham v Conner*, 464 US 1005 (1983).

An issue of fact exists concerning Defendants' Motion for Summary Judgment with regard to Plaintiffs' 4th Amendment claims of wrongful seizure and excessive force. *Sykes v. Anderson*, 625 F.3d 294 (6th Cir., 2010).

## STATEMENT OF THE ISSUES PRESENTED

1.      Are the remaining Defendants entitled to qualified immunity for Plaintiff's Fourth Amendment claims?

2.      Are the remaining Defendants entitled to qualified immunity for Plaintiff's First Amendment claims?

3.      Are the remaining Defendants entitled to immunity from the imposition of liability for Plaintiff's State Law Tort Claims?

## I.  STATEMENT OF FACTS
### A. PLAINTIFF EDWARD SLAPPEY

At the time of this incident on January 12, 2017, Edward Slappey was a 34

year-old African-American male. He was a machine operator at Precision Service

Group, where he worked for 3 years (Ex. 5, Slappey affidavit). On the date of the

incident, Slappey had completed his 16- hour work shift (Ex. 5, Slappey affidavit).

As a reward for completing the job early, Slappey's supervisor took him and his

co-workers to Freer's Bar for drinks (Ex. 5, Slappey affidavit). Slappey soon

realized that he had begun drinking on an empty stomach so he left Freer's bar and

started walking towards Telway Restaurant located approximately a half mile away

(Ex. 5, Slappey affidavit). Slappey went into the Telway, ordered some food and

used the outdoor restroom (Ex. 5, Slappey affidavit). After using the restroom,

Slappey came back into the restaurant and complained about the status of the food

he purchased. (Ex. 5, Slappey affidavit). Shortly thereafter, Defendant Carthan and

Defendant Bromley entered the Telway restaurant (Ex. 5, Slappey affidavit).

### B. FIRST ENCOUNTER BETWEEN SLAPPEY AND
### CARTHAN/BROMLEY

The entirety of Plaintiff's first encounter with Defendant Carthan and

Defendant Bromley was captured on Defendant Bromley's Bodycam footage. As

soon as Defendants entered the Telway restaurant, the following exchange occured

between Bromley and Slappey:

> **OFFICER BROMLEY:** Come on out here for a minute
> **MR. SLAPPEY:** Why?
> **OFFICER BROMLEY:** Because they don't want you in here
> **MR. SLAPPEY:** Why?
> **OFFICER BROMLEY**: That don't matter why.
> **MR. SLAPPEY:** Why? Yes, it does.
> **OFFICER BROMLEY**: It's their business.
> **MR. SLAPPEY:** I'm a paying customer
> (Ex. 3, Bromley First Bodycam at 0:00:30-0:00:41)

Within seconds of this initial interaction, Slappey complied with

Defendants' request and exited the Telway Restaurant without incident (Ex. 3,

Bromley First Bodycam at 0:00:53). While outside of the Telway Restaurant,

Slappey exhibited strange behavior but never screamed or yelled (Ex. 3, Bromley

First Bodycam).  Slappey also never disturbed any pedestrians, other customers,

etc. (Ex. 3, Bromley First Bodycam).  In fact, the body cam doesn't show any other

individuals on the street during the course of the 15-minute interaction between

Slappey and Defendants Carthan and Bromley (Ex. 3, Bromley First Bodycam).

During his encounter with Carthan and Bromley, Slappey told them that Telway

took his money (Ex. 3, Bromley First Bodycam at 0:05:03-0:05:07). Slappey

explained that he just wanted to get his food. (Ex. 3, Bromley Bodycam at 0:05:15-

0:05:17). Later, Slappey told Defendants that he paid to be in the establishment,

confirming that he paid for food that he never received (Ex. 3, Bromley Bodycam at 0:05:50-0:06:00).

Carthan and Bromley eventually told Slappey that he was free to go and left the scene (Ex. 3, Bromley Bodycam, 0:15:44) (Ex. 5, Slappey affidavit). Slappey then returned to Telway to get the food that he previously ordered and paid for (Ex. 5, Slappey affidavit). After Slappey returned to Telway, Officer Bromley and Carthan also came back (Ex. 5, Slappey affidavit).

## C. SECOND ENCOUNTER BETWEEN SLAPPEY AND CARTHAN/BROMLEY

Plaintiff's second encounter with Defendant Carthan and Defendant Bromley was not entirely recorded or preserved by Defendants. The Bodycam footage of the second encounter begins with Defendant Carthan and Defendant Bromley handcuffing Slappey and placing him in the backseat of the police vehicle.

Prior to that when Defendants returned to the Telway, they appeared very angry. They yelled at Plaintiff, escorted him to their car, handcuffed and searched him, forced him into the backseat, and transported him to a remote location (Ex. 6, Bromley Second Bodycam) (Ex. 5, Slappey affidavit) (Ex. 7, Carthan Drop-off Bodycam). Slappey justifiably believed he was under arrest (Ex. 5, Affidavit).

While Slappey was handcuffed and in police custody, he continued to protest about getting his purchased food. While Carthan was handcuffing Slappey and

putting him in the backseat of the police car, Slappey made the following

complaints:

> **MR. SLAPPEY:** Can I get the food?
> **OFFICER CARTHAN:** Slide in.
> **MR. SLAPPEY:** Can I have something to eat?
> **OFFICER CARTHAN**: Slide in first.
> **MR. SLAPPEY:** You not gonna get me the food.
>     (Ex. 6, Bromley Second Bodycam, 0:00:39-0:00:43)

After Defendants locked Slappey in by closing the rear door of the police

vehicle, Slappey continued to question why he could not get his food:

> **MR. SLAPPEY:** Why I can't get the food, man? Why can't I get something to
> eat?
>     (Ex. 6, Bromley Second Bodycam, 0:01:01-0:01:06)

Slappey continued to express his frustration with not receiving his food:

> **MR. SLAPPEY:** The fucking owner was being an asshole. I just want to eat
> my fucking food and go home.
>     (Ex. 6, Bromley Second Bodycam, 0:01:33-0:01:40)

### D. THE DROPOFF AND ASSAULT

After being handcuffed, searched, and placed in the backseat of police vehicle,

Officer Carthan and Bromley then took Slappey to an unknown location on a

vacant dimly lit street (Ex. 5, Slappey Affidavit) (Ex. 7, Carthan Drop-off

Bodycam).  Officers Carthan and Bromley took Slappey out of the backseat of the

police vehicle, uncuffed him, and gave him a misdemeanor ticket that was written

at 3:55 a.m. (Ex. 5, Slappey Affidavit) (Ex. 7, Carthan Drop-Off Bodycam).

Slappey asked Carthan what the ticket was for and Carthan responded by saying

"disorderly conduct" (Ex. 5, Slappey Affidavit) (Ex. 7, Carthan Drop-off

Bodycam). Carthan then quickly got into the police vehicle and sped off (Ex. 5,

Slappey Affidavit) (Ex. 7, Carthan Drop-off Bodycam).

The only remaining people at the vacant location were Slappey and Officer

Bromley (Ex. 5, Slappey Affidavit). The next thing that Slappey remembers is

getting hit and losing consciousness (Ex. 5, Slappey Affidavit). When he regained

consciousness, Officer Bromley was gone (Ex. 5, Slappey affidavit).

## E. DEFENDANTS' CLAIMED "COURTESY CONVEYANCE" IS HEAVILY DISPUTED

Defendants contend that Plaintiff was not arrested but was simply given a

"courtesy conveyance" closer to his home. However, Defendants' contention is a

heavily disputed factual question. Slappey's home address was 3428 Ewald Circle

and he provided that address to Bromley (Ex. 3, Bromley First Bodycam at

0:08:00)(Ex. 5, Slappey affidavit). Furthermore, Defendant Carthan admitted that

Slappey requested to go to a residence on Ewald Circle (Ex. 4, Carthan deposition,

p. 49-50). Defendant Bromley also admitted that Slappey wanted to go to Ewald

Circle (Ex. 11, Bromley deposition, p. 20). Yet, Carthan claimed that Slappey later

wanted to go to a brother's or cousin's house in the area of Michigan and Trumbell

(Ex. 4, Carthan Deposition, p. 24-25). But none of the video/audio evidence ever

captured Slappey requesting to go to this 'phantom' cousin, brother, or relative's

house because it simply never happened (Ex. 3, Bromley First Bodycam) (Ex. 6.

Bromley's Second Bodycam) (Ex. 7, Carthan Drop-off Bodycam). Slappey's only brother lived in New Mexico at the time (Ex. 5, Slappey affidavit); Slappey had no cousin or other relative who lived in the Michigan and Trumbull area (Ex. 5, Slappey Affidavit).

Furthermore, the purported "courtesy" of getting Plaintiff closer to home is completely inconsistent with the location Defendants dropped him off. The Telway restaurant is much closer to Slappey's home on Ewald Circle than is the vacant area area around Michigan and Trumbull where Defendants dropped him off (Ex. 5, Slappey affidavit). Telway Restaurant is 3.9 miles away from 3428 Ewald Circle (Ex. 12, Google Maps). Michigan and Trumbull is 5.7 miles away from 3428 Ewald Circle (Ex. 12, Google Maps). The contention that Plaintiff was not arrested is also contradicted by Defendant Carthan's own deposition testimony. Defendant Carthan admits that he handcuffed Plaintiff and placed him in the backseat of the police vehicle (Ex. 4, Carthan deposition, p. 18). Carthan also admits that Slappey was not free to go and that the purpose of handcuffing and placing in the backseat was to arrest (Ex. 4, Carthan deposition, p. 18, 58).

## F.  INTERACTIONS BETWEEN SLAPPEY AND DEFENDANT WILLIAMS AT MOTORCITY CASINO, TELWAY, FREER'S BAR, AND DETROIT RECEIVING HOSPITAL

Once he regained consciousness after being assaulted, Slappey saw the lights at the MotorCity Casino and walked towards it (Ex. 5, Slappey Affidavit). There,

Slappey first encountered Defendant Williams (hereinafter 'Williams') (Ex. 5, Slappey Affidavit). Slappey told Officer Williams that he had been taken to an unknown vacant location and assaulted by police officers; Slappey requested medical treatment (Ex. 5, Slappey Affidavit). Williams was extremely hostile;  he placed Slappey in the backseat of the police vehicle and set up a meeting with Bromley and Carthan.  Williams drove Slappey back to the Telway restaurant (Ex. 5, Slappey Affidavit). While at Telway, Slappey remained in the backseat of Williams' police vehicle, while Williams got out to talk with Bromley and Carthan (Ex. 5, Slappey Affidavit).

Carthan and Bromley arrived at the Telway and began speaking with Williams and another DPD officer (Ex. 5, Slappey Affidavit). Slappey started taking pictures of the officers standing outside of Telway (Ex. 5, Slappey Affidavit) (Ex. 13, Pictures of Officers outside Telway). After some time, Williams drove Slappey back to Freer's Bar instead of taking him to seek medical treatment (Ex. 5, Slappey Affidavit). While at Freer's Bar, Officer Williams, Carthan, and Bromley impounded Slappey's vehicle (Ex. 5, Slappey Affidavit). After the officers impounded Slappey's vehicle, Officer Williams finally drove Slappey to Detroit Receiving Hospital (Ex. 5, Slappey Affidavit).

When Slappey finally at Detroit Receiving Hospital after being driven around Detroit, the nurse began asking Slappey intake questions about his medical history,

pain, allergies, etc. but Officer Williams, who appeared to be very angry, kept

interrupting the nurse's questioning (Ex. 5, Slappey Affidavit). At that point,

Slappey complained again to Officer Williams "Now you fucking believe me?

Now you want to do your fucking job?" (Ex. 5, Slappey Affidavit) (Ex. 1,

Slappey's 2017 Criminal Transcript, p. 85). Slappey was frustrated that Officer

Williams took him back to Telway before seeking medical treatment, took him

back to Freer's Bar before seeking medical treatment, and impounded Slappey's

vehicle (Ex. 5, Slappey Affidavit). Officer Williams then handcuffed Slappey and

issued a disorderly conduct charge at about 6:25 a.m. (Ex. 5, Slappey Affidavit).

Throughout his time at Detroit Receiving Hospital, Slappey never cursed at any

nurses, doctors, or medical staff (Ex. 5, Slappey Affidavit). Furthermore, no

patients or medical staff ever complained about Slappey's behavior (Ex. 5, Slappey

Affidavit). Slappey also never screamed or yelled at anyone at Detroit Receiving

Hospital (Ex. 5, Slappey Affidavit). All that Slappey did was complain about

Williams' conduct (Ex. 5, Slappey Affidavit).  Eventually, officers transported

Slappey to jail where he remained for 3-4 days (Ex. 5, Slappey Affidavit). The

disorderly conduct charge that Slappey was issued by Carthan was dismissed on

July 10, 2017 (Ex. 5, Slappey Affidavit). Slappey was found by the jury to be not

guilty of the disorderly conduct charge that was issued by Williams (Ex. 5, Slappey

Affidavit).

### G. PLAINTIFF'S DAMAGES

Slappey suffered physical, financial and emotional damages as a result of the wrongful arrest, seizure and retaliation for his protected 1st Amendment speech. Slappey was wrongfully detained for 3-4 day in jail. Slappey also missed several days of work for court appearances, and was forced to retain attorneys for two different criminal trials.  As a result of these incidents, Slappey also sustained physical injuries including but not limited to: bruising and contusions on his face/head, an orbital fracture, headaches, and migraines.

As a result of Defendants' wrongful conduct, Slappey also suffered emotional damages. Since these incidents, Slappey has developed a fear and distrust of the police. Slappey continues to have flashbacks and nightmares of these encounters and it has negatively affected his sleep. Slappey has also felt increased anxiety, stress, anger, irritability, and agitation since these encounters with Detroit police. (Ex. 5, Slappey Affidavit).

## III.   ARGUMENT

### A.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment under Federal Rules of Civil Procedure 56(c), is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

*LaPointe v. United Autoworkers, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The

evidence, all facts and any inferences that may permissibly be drawn from the facts

must be viewed in the light most favorable to the nonmoving party.  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986) (citing *United*

*States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curium)).   A judge may not

make credibility determinations or weigh the evidence.  *Anderson v. Liberty*

*Lobby, Inc*., 477 U.S. 242, 255 (1986). A claim of qualified immunity presents two

closely linked questions: whether the defendant violated the plaintiffs' rights and

whether those rights were clearly established at the time of the alleged violation.

*Saucier v. Katz*, 533 U.S. 194, 150 L Ed 2d 272 (2001).  In their present motion,

Defendants argue for qualified immunity on Plaintiff's First and Fourth

Amendment claims.

## B.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY – FOURTH AMENDMENT WRONGFUL SEIZURE CLAIMS

Qualified immunity is a two-step process. *Green v. Throckmorton*, 681 F.3d

853, 864 (6th Cir. 2012); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).  First, the

Court determines whether, based upon the applicable law, and viewing the facts in

the light most favorable to the plaintiff, the allegations give rise to a constitutional

violation.  Second, the Court assesses whether the right was clearly established at

the time of the incident. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir.2013); *see also, Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if the undisputed facts or the evidence viewed in a light most favorable to the plaintiff fails to present a prima facie violation of clearly established constitutional law can this court find that the Defendant is entitled to qualified immunity.

The Fourth Amendment requires that probable cause support an arrest. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001), *cert denied*, 537 U.S. 819, 123 S.Ct. 95, 154 L.Ed 2d 26 (2002). Thus, "for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)

As indicated by the Sixth Circuit, "An officer has probable cause when the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Miller v. Sanilac County*, 606 F.3d 240, 248 (6th Cir. 2010) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012) quoting *Parsons v. City of Pontiac,* 533 F.3d 492, 501 (6th Cir. 2008).

The Sixth Circuit has held that:

Significantly, an officer may not base his probable cause determination on speech protected by the First Amendment. *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997).

It is important to note that Defendants violated Slappey's Constitutional rights on two separate occasions stemming from the Slappey's first disorderly conduct arrest at Telway Restaurant (3:55 a.m.) and later from Slappey's second disorderly conduct arrest at Detroit Receiving Hospital (6:25 a.m.).

### i. <u>FOURTH AMENDMENT WRONGFUL SEIZURE BY CARTHAN AND BROMLEY</u>

A substantial portion of the encounter at Telway Restaurant is captured on Defendant Carthan and Defendant Bromley's Bodycam footage. Defendants make the erroneous contention that Slappey was not arrested, but rather agreed to a "courtesy conveyance." Based on the clear video evidence, Slappey was handcuffed, placed in the backseat of a police vehicle, transported further away from his home, dropped off and ticketed for disorderly conduct (Ex. 5, Slappey Affidavit).

Defendants argue in the alternative, that Defendants Carthan and Bromley had probable cause to arrest Slappey for disorderly conduct simply because "he returned to Telway after being asked to leave."

Defendants claim that Plaintiff violated Detroit City Code 31-5-1, which states:

> It shall be unlawful for any person to make or assist in making any noise, disturbance, or improper diversion, or any rout or riot, by which the peace and good order of the neighborhood is disturbed.

The statute therefore requires both that an individual "make or assist in making any noise, disturbance, or improper diversion" ___and___ that the "peace and good order of the neighborhood is disturbed."

Although Slappey's behavior may be considered strange, no admissible evidence supports the contention that probable cause existed for Slappey's disorderly conduct arrest.

Furthermore, Defendant Carthan's deposition testimony confirms that he lacked probable cause to arrest Slappey for disorderly conduct because there is no admissible evidence that the peace and good order of the neighborhood was disturbed in any way:

```
7   Q.   At the jury trial do you recall being asked the
8          question of "What did you believe were actions you
9        observed that had risen to a level for you to issue
10         that ticket?"  And your answer was, "Being belligerent.
11         Being loud and disrespectful."
12  A.   Yes.
13  Q.   And is that still the basis -- do you still contend
14         that that's the basis for you issuing Mr. Slappy a
15         disorderly conduct ticket?
16  A.   Yes.
```

     (Ex. 4, Carthan deposition testimony, p. 27)

In addition, the U.S. Supreme Court, the Sixth Circuit and the Michigan Supreme Court have all made it absolutely clear that these "disorderly conduct"

ordinances cannot be used to suppress free speech. The Sixth Circuit has long ago held found that an officer may not base his probable cause determination for disorderly conduct on speech protected by the First Amendment. *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997).

In *Sandul*, the arrestee's act of shouting "fuck you" at a group of abortion protestors was speech protected by First Amendment and the officer was not entitled to qualified immunity because arrestee's right to engage in such speech was clearly established and a reasonable officer should have known that speech was protected. Thus, the officer did not have probable cause to make an arrest.

This basic rule concerning similar ordinances has been affirmed many times by the Supreme Court and the Sixth Circuit.  *See*, e.g., *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993); *United States v. Reed*, 2000 WL 665398, at *2 (6th Cir. May 23, 2000). When an officer literally has no idea whether a presumptively law-abiding citizen has violated the law, the Fourth Amendment clearly commands that the government let the individual be. Indeed, if anything is clear about the Fourth Amendment, it is this: government may deprive its citizens of liberty when, and only when it has a viable claim that an individual has committed a crime, and that claim is supported by concrete and identifiable facts. *See*, e.g., *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993); *United States v. Reed*, 2000 WL 665398, at *2 (6th Cir. May 23, 2000).

Based on all of the admissible evidence, there was never probable cause to arrest Slappey during the first or second encounters at Telway (Ex. 3, Bromley First Bodycam, Ex. 6, Bromley Second Bodycam). All Slappey was ever guilty of is complaining about  the Telway restaurant because he did not receive the food that he ordered and paid for (Ex. 5, Slappey Affidavit).

Because an issue of fact exists on the Defendant Carthan and Defendant Bromley's probable cause to arrest and seize Slappey, Defendants motion should be denied.

     ii.   **<u>FOURTH AMENDMENT WRONGFUL SEIZURE BY WILLIAMS</u>**

Similarly, there was never probable cause for Williams to arrest Slappey for disorderly conduct at Detroit Receiving Hospital. When Slappey finally arrived at Detroit Receiving Hospital after being driven around Detroit, the nurse began asking Slappey intake questions about his medical history, pain, allergies, etc. but Officer Williams, who appeared very angry, kept interrupting the nurses questioning (Ex. 5, Slappey Affidavit). At that point, Slappey complained about Officer Williams "Now you fucking believe me? Now you want to do your fucking job?" (Ex. 5, Slappey Affidavit) (Ex. 1, Slappey's 2017 Criminal Transcript, p. 85). Slappey was frustrated that Officer Williams took him back to Telway before seeking medical treatment, took him back to Freer's Bar before seeking medical treatment, and impounded Slappey's vehicle (Ex. 5, Slappey Affidavit). Only after

Slappey's complaints did Officer Williams handcuff Slappey and issue him a disorderly conduct charge at about 6:25 a.m. (Ex. 5, Slappey Affidavit). Furthermore, Officer Williams seemingly has no idea what constitutes probable cause (Ex. 15, Williams Deposition, p. 25-26).

Because an issue of fact exists on the Defendant Williams' probable cause to arrest and seize Slappey's claimed criminal activity, Defendants motion should be denied.

### C. DEFENDANT BROMLEY NOT ENTITLED TO QUALIFIED IMMUNITY- FOURTH AMENDMENT EXCESSIVE FORCE CLAIM

The Fourth Amendment to the United States Constitution provides for the right to not be deprived of life or liberty without due process of law and not to be subjected to excessive force. The use of force must be objectively reasonable. An officer shall only use that force which a reasonably prudent officer would use under the similar circumstances. See, *Graham v Conner*, 464 US 1005 (1983).

Because the excessive force used against Plaintiff occurred during his arrest, the parties' rights and liabilities are governed by the Fourth Amendment. *Phelps v. Coy*, 286 F3d 295, 300 (6th Cir. 2002).

Courts should pay particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether he/she is actively resisting arrest or attempting to evade arrest by

16

flight. *Graham v. Connor*, 490 U.S. 386, 394, 104 LEd2d 443 (1989); *Kostrzewa v. Troy*, 247 F3d 633 (6th Cir. 2001).

In assessing the reasonableness of Defendant's actions, a Court must analyze the events in segments. *Phelps v. Coy*, 286 F3d 295, 301 (6th Cir. 2002); *Dickerson v. McClellan*, 101 F3d 1151, 1161-62 (6th Cir. 1996).

In *Phelps*, the plaintiff was handcuffed when a command officer thought the plaintiff was trying to kick another officer. The command officer tackled the plaintiff, and after being on top of him, hit the plaintiff in the face twice and banged his head into the floor at least three (3) times. The Sixth Circuit held that looking at the segment after the plaintiff had been tackled, the District Court committed no error in denying the defendant's motion for qualified immunity. The Sixth Circuit concluded:

> [O]n the facts as we must take them, there was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was.

> *Phelps*, *supra*. at 301

See also, *Adams v. Metiva*, 31 F3d 375, 386 (6th Cir. 1994) (use of force after suspect incapacitated by mace would be excessive as a matter of law); *McDowell v. Rogers*, 863 F2d 1302, 1306 (6th Cir. 1988) (blow with nightstick to handcuffed, unresisting suspect would be gratuitous and therefore unreasonable).

In this case, Defendant Carthan and Bromley arrested Slappey at Telway restaurant by handcuffing him and placing Slappey in the backseat of a police vehicle. Once arrested, Defendant Carthan and Bromley drove Slappey to a vacant dimly lit area, took him out of the police vehicle, removed the handcuffs, and provided Slappey with a disorderly conduct ticket. Slappey offered no resistance at any point. Slappey only verbally contested why he was receiving a disorderly conduct ticket before Officer Carthan got the police vehicle and sped off without Officer Bromley. The only remaining people at the vacant location were Slappey and Officer Bromley. Other than complaining to Officer Bromley, Slappey had not resisted, nor interfered with his activities in any way. Slappey then got hit and lost consciousness. When Slappey regained consciousness, Officer Bromley was gone (Ex. 5, Slappey affidavit).

Based on all indications from the evidence, Slappey had been easily handcuffed and transported, never offered resistance, and never threated officers or others when this abuse occurred.  Defendant Bromley's actions caused various injuries to Plaintiff (Ex. 5, Slappey affidavit).  Under the circumstances, and in the light most favorable to Plaintiff, Defendant Bromley used excessive force on Edward Slappey, thus violating his Fourth Amendment rights.

The Court's inquiry doesn't end with a determination that the facts would amount to a violation of Plaintiffs' Fourth Amendment rights.  Defendants may be

18

entitled to summary judgment if Plaintiffs' rights were not clearly established at the time of the incident.

Defendants, however, fail on this step as well.  The unlawfulness of the Defendants' actions was clearly established at the time of the events in this case. See, e.g.,  *Graham v. Connor, supra.; Phelps v. Coy*, *supra.; Adams v. Metiva*, 31 F3d 375, 386 (6th Cir. 1994) (unconstitutionality of use of gratuitous force against helpless and incapacitated suspect during arrest well established in 1991); *McDowell v. Rogers*, 863 F2d 1302, 1306 (6th Cir. 1988).  No reasonable officer could have thought these actions were lawful-- in assaulting Slappey, who was unarmed and who offered no resistance or threat to anyone, and who fully complied with all the officer's commands.

### D. DEFENDANTS NOT ENTITLED TO QUALIFIED IMMUNITY-FIRST AMENDMENT

A First Amendment claim has three elements: 1)- Plaintiff was engaged in conduct protected by the Constitution and by statute; 2)- Defendant took an adverse action against Plaintiff that would deter a person of ordinary firmness from engaging in that protected conduct; and, 3)- The adverse action was taken (at least in part) because of the protected conduct.  *See*, e.g., *Bloch v. Ribar,* 156 F3d 673 (6th Cir, 1998); *Bell v. Blatter*, 175 F3d 378 (6th Cir, 1999).

A First Amendment constitutional question arose when Slappey was subjected to an initial disorderly conduct arrest, an assault, and a second disorderly

conduct arrest for having engaged in constitutionally protected speech.  *Green v. Barber*, 310 F3d 889 (6th Cir.2002);

The First Amendment protects the right to criticize or question public officials, including police officers.  *Bloch, supra*; *Bell, supra.;* Damages need not be visible or specific.  They may include impairment of reputation, personal humiliation, and mental anguish and suffering. The harm suffered can include the adverse consequences that flow from inhibition of the constitutionally protected activity.  It may include the retaliatory action's chilling effect on Plaintiff's First Amendment rights.  *Bloch, supra*; *Bell, supra*.

"An act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper." *Bloch, supra*; *Bell, supra*.

Circumstantial evidence, like timing of events or the disparate treatment of similarly situated individuals is appropriate evidence for a jury to consider.  *Bell, supra.*  Proof of an official's retaliatory intent rarely will be supported by direct evidence of such intent.  Public officials rarely, if ever, will admit to retaliating against First Amendment rights. *Comstock v. McCrary,* 273 F.3d 693 (6th Cir., 2001) [Inferences from circumstantial evidence sufficient to show Defendant's subjective knowledge, *Id.* at 703].  Accordingly, claims involving proof of a defendant's intent seldom lend themselves to summary disposition.

For purposes of Plaintiff's First Amendment claims, Plaintiff has presented evidence of all three required elements in his encounter with Defendants Carthan/Bromley and separately with Defendant Williams.

### i. FIRST AMENDMENT RETALIATION BY CARTHAN AND BROMLEY

First, Plaintiff was engaged in protected First Amendment activities when he lawfully complained about not receiving the food that he purchased in a timely manner as well as Officer Carthan and Bromley's refusal to allow him to retrieve his purchased food. Second, Defendants handcuffed and force Slappey into the backseat of the police vehicle, transported him to a dimly lit location further away from his home address, ticketed him for disorderly conduct and assaulted him after Slappey's repeated complaints. Handcuffing, seizing Plaintiff in the backseat of a police vehicle, transporting him to a remote location, ticketing and assaulting him are clearly adverse actions which would deter a person from engaging in protected speech.  Third, the circumstantial evidence of Defendant's irritation at Slappey is sufficient to create a jury question on Defendants' intent to retaliate Carthan makes statements such as "I'm tired of this shit, chances are up"  and "You're not responding to me correctly" (Ex. 14, Carthan Bodycam at Telway, 0:00:52)(Ex. 3, Bromley First Bodycam, 0:10:15).  As in most First Amendment cases, this is a jury question.

The Sixth Circuit has found liability in numerous First Amendment cases involving retaliation against criticism of police.  See, e.g., *Bloch, supra*.  In *Bloch*, the Plaintiff made a complaint about the county sheriff not doing an adequate job investigating a rape complaint.  Shortly thereafter, the sheriff held a press conference and disclosed details of the rape that were embarrassing and offensive to plaintiff, but true.  The Sixth Circuit held that Plaintiff had sufficient grounds for a First amendment retaliation claim against the defendants.  See also, *Green v. Barber*, *supra.* Clearly established law gave notice to police that the use of these ordinances to claim criminal activity of a citizen who was merely questioning police was un-Constitutional. Thus, Plaintiff's First Amendment right was clearly established at the time of this incident on January 12, 2017.

## ii.   <u>FIRST AMENDMENT RETALIATION BY WILLIAMS</u>

First, Plaintiff was engaged in protected First Amendment activities when he complained about Defendant Williams interrupting Plaintiff's intake questioning from the nurse and the prolonged time that it took Defendant Williams to transport Plaintiff to receive medical treatment. In particular, Plaintiff was engaged in protected First Amendment activities when he complained to Officer Williams, "So now you believe me? Now you want to do your fucking job?" Second, Defendant Williams handcuffed and arrested Plaintiff for disorderly conduct and transported him the to jail immediately after Plaintiff's complaints. Handcuffing,

arresting, and transporting Plaintiff to jail are clearly adverse actions which would

deter a person from engaging in protected speech.  Third, the circumstantial

evidence of Defendant Williams' anger and irritation in responding to Slappey's

complaints is sufficient to create a jury question on Defendants' intent to retaliate

(Ex. 9 Rear Camera)(Ex. 5, Slappey affidavit.)  As in most First Amendment cases,

this is a jury question.

### E. DEFENDANTS ARE NOT ENTITLED TO IMMUNITY FOR PLAINTIFF'S STATE LAW TORT CLAIMS

#### i.   A QUESTION OF FACT EXISTS ON DEFENDANTS' BAD FAITH

Immunity for government employee's intentional torts is set by statute.

MCL 691.1407(3). In *Odom v Wayne County*, 482 Mich 459 (2008), the Michigan

Supreme Court considered the statutory immunity available for claims of

intentional tort and concluded that the determination of immunity available to

lower level governmental employees for such allegations would be governed by

the test enunciated in *Ross v Consumers Power* (On Rehearing), 420 Mich 567

(1984). Accordingly, a government employee has immunity with regard to any

claim of intentional tort if it is determined that:

> (1)   the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority,
> (2)    the acts were undertaken in good faith, and
> (3)   the acts were discretionary, rather than ministerial, in nature.

*Odom, supra*. at 461

A government employee is not acting in good faith when he acts maliciously or with a wanton or reckless disregard of the rights of another. *Odom, supra*. at 464. Michigan standard civil jury instructions define "wanton misconduct" as "conduct or a failure to act that shows such indifference to whether harm will result as to be equal to a willingness that harm will result." *Mich Civil JI* 14.12, 14.11, cited in *Odom, supra.* at 475.

Malice may be inferred from absence of probable cause, *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 617 (1981). Further, the Michigan Supreme Court has specifically held that "deliberate falsehood" or "reckless disregard for the truth" is malice. *Feyz v. Mercy Memorial Hosp*., 475 Mich. 663, 719 N.W.2d 1 (2006). In this case, there are genuine questions of material fact with regard to Defendant Carthan, Bromley, and Williams' fabrication of probable cause and their malice. See, e.g., *Miller v. Sanilac Cnty.,* 606 F.3d 240 (6th Cir., 2010). The Defendants' anger at Slappey is also important evidence.

The uncontroverted video evidence combined with Slappey's testimony and affidavit show that Defendants were angry and had no probable cause to arrest Slappey for disorderly conduct at any time (Ex. 3, Bromley First Bodycam)(Ex. 6, Bromley Second Bodycam)(Ex. 9, Rear Cam at Hospital)(Ex. 5, Slappey Affidavit). Because an issue of fact exists on the Defendants' state of mind and

probable cause to arrest and seize Slappey, Defendants request to dismiss Plaintiff's false arrest and false imprisonment claims must be denied.

## ii. A QUESTION OF FACT EXISTS ON PLAINTIFF'S STATE INTENTIONAL TORT CLAIMS

For the same reasons that Plaintiff has created an issue of fact on his constitutional claims of wrongful arrest, wrongful detention and wrongful excessive force, he has created of fact for the corresponding state intentional torts of assault, battery, false arrest, and false imprisonment. See, *Smith v. Stolberg,* 231 Mich. App. 256, 260 (1998) [assault and battery]; *Moore v. City of Detroit*, 252 Mich. App. 384 (2002) [false arrest/imprisonment];

## IV. CONCLUSION

Plaintiff respectfully requests that this Court deny the Motion for Summary Judgment brought by Defendants Carthan, Bromley, Williams on the grounds argued above. Plaintiff stipulates to the dismissal of claims against Defendants Bonds and City of Detroit.


Respectfully Submitted,

/s/ David A. Robinson
David A. Robinson (P 38754)
Thomas E. Kuhn (P37924)
Brandon McNeal (P81300)
Attorneys for Plaintiff
davidrobinsonlaw@gmail.com

# INDEX OF EXHIBITS

1. **2017 Criminal Trial Transcript**

2. **2019 Criminal Trial Transcript**

3. **Bromley First Bodycam** *(To be Filed in Traditional Manner)*

4. **Carthan Deposition**

5. **Slappey Affidavit**

6. **Bromley Second Bodycam** *(To be Filed in Traditional Manner)*

7. **Carthan Drop-Off Bodycam** *(To be Filed in Traditional Manner)*

8. **Williams Rear Cam at Casino** *(To be Filed in Traditional Manner)*

9. **Williams Rear Cam at Hospital** *(To be Filed in Traditional Manner)*

10. **Slappey IA Audio Statement** *(To be Filed in Traditional Manner)*

11. **Bromley Deposition**

12. **Google Maps**

13. **Pictures of Officers outside Telway**

14. **Carthan Bodycam at Telway** *(To be Filed in Traditional Manner)*

15. **Williams Deposition**

## CERTIFICATE OF SERVICE

Cheryl Watson, being first duly sworn, deposes and says that on the **3rd day of August, 2020**, she caused a copy of this document to be served electronically upon all parties of record so registered with the United States District Court for the Eastern District of Michigan, and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to their address(es) of record herein, and depositing said envelope(s) and its contents in a receptacle for the US Mail.

By: /s/Cheryl Watson
**Cheryl Watson**