UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD SLAPPY,

     Plaintiff,

v.                                Case No. 19-10171
                                     Honorable Victoria A. Roberts

CITY OF DETROIT et al.,

     Defendants.

_____/

## ORDER REGARDING PLAINTIFF'S AND DEFENDANTS' MOTIONS IN LIMINE [ECF No. 62-79]

### I.    INTRODUCTION

Edward Slappy ("Slappy") filed a 42 U.S.C. § 1983 claim against the City of Detroit, Eric Carthan, Eric Bromley, and Randolph Williams (collectively, "Defendants"). The matter is before the Court on Plaintiff's motions in limine. [ECF Nos. 62-65] and Defendants' motions in limine, [ECF Nos. 66-79]. On July 8, 2021, the Court held a hearing on the motions. Brandon McNeal and David Robinson appeared for Slappy; Alfred Ashu and Krystal Crittendon appeared for Defendants.

### II.    BACKGROUND

On January 12, 2017, Slappy and his supervisor went to Freer Bar after work. Slappy realized he was drinking on an empty stomach and decided

to order food from Telway Hamburgers ("Telway") on Michigan Avenue. Once he arrived at Telway, Slappy ordered and paid for his food.

Defendants say that Telway employees called the police because Slappy became disruptive and refused to leave the restaurant. Slappy says he simply asked, "where his food was," and Telway staff never asked him to leave the restaurant.

Police officers Carthan and Bromley arrived at Telway at approximately 3:15 a.m. They asked Slappy to leave the establishment. Slappy says he complied with the officers' request and went outside. While outside, Slappy admits that he exhibited "strange" behavior but says he never disturbed anyone; Defendants say Slappy was intoxicated and belligerent. Carthan and Bromley eventually told Slappy he was free to go and both officers left the scene.

Slappy returned to Telway to get his food. Officers Bromley and Carthan returned as well. They handcuffed Slappy, searched him, put him into the backseat of their squad car and began to transport him. Defendants say they were providing Slappy with a "courtesy conveyance" to a relative's house. However, Defendants transported Slappy from Telway, which is 3.9 miles away from his residence, to the Michigan and Trumbull area — roughly 5.7 miles away from his residence.

Once Slappy got out of the car, Carthan and Bromley say they gave him a citation for disorderly conduct, gave him a brown paper bag containing the food he ordered from Telway, and left the scene. Slappy claims before the officers left, they hit him — rendering him unconscious.

Subsequently, Slappy walked to Motor City Casino where he told Officer Randolph Williams that two Detroit police officers assaulted him. Williams and his supervisor transported Slappy to Detroit Receiving Hospital. There, Defendants say Slappy continued to be combative. Williams issued a second ticket for disorderly conduct. The first disorderly conduct charge was dismissed and a jury found Slappy not guilty on the second.

Slappy sued Defendants under 42 U.S.C. § 1983 claiming a multitude of constitutional violations. Slappy voluntarily dismissed a number of claims, and the Court dismissed several claims as a result of Defendants' summary judgment motion. [ECF. No 50]. The only surviving claims are all against Carthan, Bromley, and Williams: (1) Fourth Amendment unlawful search and seizure (Count I); (2) First Amendment retaliation (Count I); and (3) false arrest and false imprisonment (Count IV).

## III.    ANALYSIS

A district court may rule on evidentiary motions in limine "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). In doing so, the Court should exclude evidence only when that evidence is determined to be clearly inadmissible on all potential grounds. *Ind. Ins. Co. v. General Elec. Co*., 326 F. Supp.2d 844, 846 (N.D. Ohio 2004). The trial court retains the discretion to grant or deny a motion in limine. *Branham v. Thomas Cooley Law Sch*., 689 F.3d 558, 560 (6th Cir. 2012).

Only relevant evidence is permitted under Fed. R. Evid. 401 and 402. Irrelevant evidence is impermissible. Evidence is considered "relevant" if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 403 requires the Court to exclude even relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

**A. Plaintiff's Motions in Limine**

**1. To preclude dismissed and settled claims [ECF No. 62]**

Slappy moves to preclude Defendants' reference to dismissed defendants and dismissed and/or settled claims. The Court dismissed excessive force and assault and battery claims on summary judgment. [ECF No. 50]. Slappy voluntarily dismissed: municipal liability claims against the City of Detroit; all claims against Terry Bonds; his gross negligence claim; his intentional infliction of emotional distress claim; his excessive force claim and assault and battery claims against Carthan; and his Fourth Amendment unlawful search and seizure claim with respect to the seizure of his vehicle. *Id.* At the hearing, Defendants conceded that settled claims may not come in under Fed. R. Evid. 408. Defendants stated they did not intend to refer to dismissed defendants or claims but argued that the alleged use of force and Slappy's ability to recall events are directly at issue. Thus, to the extent that there are facts related to both a dismissed claim and a pending claim, Defendants argue that those facts should be admissible.

Case law does not support the admission of evidence related to dismissed parties and claims; it lacks probative value. *See Young v. Version Allsteel Press Co.*, 539 F. Supp. 193 (E.D. Pa., 1982); *Trout v. Milton S.*

*Hershey Medical Center*, 572 F. Supp. 591 (M.D. Pa. 2008); *Bryce v. Trace, Inc.*, No. CIV-06-775-D, 2008 WL 906142 at *3 (W.D. Okla. March 31, 2008).

The Court **GRANTS** Slappy's motion in limine to preclude reference to dismissed and settled claims.

### 2. To preclude reference to Plaintiff's recorded force investigation interview and citizen complaint [ECF No. 63]

Slappy moves for an order precluding Defendants' reference to his citizen complaint against Bromley and Carthan and the Detroit Police Department's Internal Affairs Division force investigation interview regarding his assault and battery and excessive force allegations against Bromley and Carthan.

Slappy argues that the evidence is irrelevant because it focuses solely on the excessive force and assault and battery claims against Bromley and Carthan that have already been dismissed.

Defendants argue that the video also discusses Slappy's inability to recall events the night of the incident, the impoundment of his car, and an invitation for Slappy to voice any other grievances that he had. Slappy did not voice any other grievances during the recorded interview. Defendants say this evidence is directly relevant to Slappy's credibility and can be used for impeachment pursuant to Fed. R. Evid. 608. They also argue the

evidence is admissible under Fed. R. Evid. 613 as a prior inconsistent statement.

The Court reviewed the interview and finds that it did not only discuss Slappy's excessive force and assault and battery claims. The Court disagrees with the Defendants that the evidence may come in as a prior inconsistent statement under Fed. R. Evid. 613(b); it is not a prior inconsistent statement because the interview and complaint are opposing party statements under Fed. R Evid. 801(d)(2).

The evidence can potentially come in as a party admission pursuant to Fed. R. Evid. 801(d)(2) to impeach Slappy's credibility.

The Court **DENIES** Slappy's motion in limine to preclude reference to his force investigation interview and citizen complaint. The Court presumes, however, that Defendants will seek to admit only relevant portions of the recorded interview and citizen complaint.

### 3. To preclude prejudicial and irrelevant questions and answers [ECF No. 64]

This motion seeks to preclude reference to Slappy's prior arrests, convictions, and alcohol rehabilitation treatment. He says such references would be irrelevant and prejudicial. Slappy argues that the evidence is

prohibited extrinsic evidence of specific instances of conduct under Fed. R. Evid. 608(b) and not a crime subject to impeachment under Fed. R. Evid. 609. He says that none of his convictions is admissible under Fed. R. Evid. 609(a)(2) because they do not relate to dishonesty.

Although Defendants stated that they do not intend to discuss Slappy's prior arrests, convictions, and rehabilitation treatment they asked the Court to allow them to reserve the right to discuss this evidence if Slappy opens the door, especially as it relates to his non-economic damages. They argue that the evidence is relevant under Fed. R. Evid. 404(b)(2) for "other purposes" than impeachment, such as knowledge.

So long as Slappy's prior convictions do not involve a crime with elements that involve dishonesty or false statements pursuant to Fed. R. Evid. 609(a)(2) they may not come in as evidence.

There is no rule that allows evidence of prior arrests or rehabilitation treatment. There is no reason to admit evidence of Slappy's prior arrests or rehabilitation except to show propensity; it is inadmissible under Fed. R. Evid. 404(b)(1).

The Court **GRANTS** Slappy's motion to preclude prejudicial and irrelevant questions and answers.

### 4. To preclude testimony from Raymond Diaz/Sara Schulz and to preclude admission of their "Police Photographs" [ECF No. 65]

Plaintiff's final motion asks the Court to preclude Raymond Diaz and Sara Schulz, evidence technicians, from testifying and presenting evidence of photographs they took of Slappy as part of their use of force investigation. Slappy says that because his disorderly conduct, excessive force, and assault and battery charges have been dismissed, allowing testimony or evidence relating to these dismissed claims has a substantial likelihood of misleading the jury, confusing the issues, and wasting time.

Defendants argue that Slappy's motion is premature; Schulz and Diaz's testimony may be relevant depending on Slappy's testimony at trial. With regard to the photographs, Slappy argues the photos taken immediately after his arrest are relevant to his damage calculation for emotional and psychological injuries related to his arrests.

Slappy alleged a number of injuries resulting from his arrest including, but not limited to fear, anxiety, degradation, humiliation, shame, and emotional distress. Although Schulz and Diaz took their photos after the incident at Telway and after Slappy arrived at Detroit Receiving Hospital, photographs of his physical condition hours after the incident are relevant; they could help the jury determine the extent of Plaintiff's disputed damages.

Their probative value also outweighs their prejudicial value. *See Dixon v. Int'l Harvestor Co*., 754 F.2d 573, 586 (5th Cir. 1985) (holding that photographs of a plaintiff's wounds were "relevant to demonstrate the nature of [plaintiff's] injuries.")

Assuming their proper authentication under Fed. R. Evid. 901, the Court sees no issue in allowing admission of the photographs and Diaz's and Schulz's testimony to that end. However, any testimony that does not pertain to the photographs and is not rationally based on their perceptions as lay persons will not be admitted. *See* Fed. R. Evid. 701.

Slappy's motion is **DENIED WITHOUT PREJUDICE**. He may renew his motion depending on the evidence presented at trial.

### B. Defendants' Motions in Limine

#### 5. To exclude references to officer representation and indemnification [ECF No. 66]

Defendants move to preclude Slappy from stating in front of the jury that Defendants are indemnified and represented by the City of Detroit. Defendants argue indemnity is akin to insurance; Fed. R. Evid. 411 precludes reference to it, and it is irrelevant to the officers' individual liability or the city's respondeat superior liability.

Slappy says he does not plan to use this evidence; however, he argues that he can foresee a potential scenario creating the need to proffer evidence

regarding indemnification if the Defendants open the door by suggesting that they will be personally responsible to pay any damages.

Generally, government indemnification of employee § 1983 liability is treated in the same manner as private liability insurance — which is not admissible under Fed. R. Evid.411 to prove whether the person acted negligently or wrongfully — and this information is excluded from the jury. *Lopez v. City of Cleveland*, No. 1:13 CV 1930, 2016 WL 6587463, at *3 (N.D. Ohio Apr. 18, 2016) (citing, *Johnson v. Howard*, 24 F. Appx. 480 (6th Cir. 2001)).

However, the Court may admit this evidence for another purpose, such as to prove a witness's bias or prejudice, or to prove agency, ownership, or control. *See* Fed. R. Evid. 411. Admissibility of evidence of liability insurance for a purpose other than fault is still subject to the requirements of F. R. Evid. 403 including consideration of the potential effectiveness of a limiting instruction, pursuant to Fed. R. Evid. Rule 105. *See* § 411:1 Liability insurance, 3 Handbook of Fed. Evid. § 411:1 (9th ed.). It is also appropriate for the court to question the jurors as to whether they can decide the matter without letting the fact of insurance or indemnification affect their judgment *Id*.

Defendants' Motion is **GRANTED WITHOUT PREJUDICE**.

**6. To exclude reference to newspaper articles and other media reports or TV broadcasts regarding unrelated incidents involving allegations of police misconduct, protests, civil unrest, "Black Lives Matter," "All Lives Matter," "Blue Lives Matter," George Floyd, or police perceptions generally [ECF No. 67]**

Defendants move to preclude Slappy from making reference to Black, Blue, or All lives matter, or any general refences to police misconduct which has received national attention. The use of this evidence, they argue, would be irrelevant and more prejudicial than probative because of the inflammatory nature of the information.

Slappy says he has no intention of presenting evidence on these topics. Nevertheless, he says he is entitled to ask questions of Defendants concerning their knowledge of constitutional rights violations that resulted in civil lawsuits, since it is directly relevant to any punitive damages assessment and Defendants' state of mind.

 "Unrelated allegations and incidents of police misconduct possess minimal—if any—probative value while carrying a great risk of prejudice to police officers." *Martin v. City of Chicago*, No. 15-CV-04576, 2017 WL 2908770, at *6 (N.D. Ill. July 7, 2017) (barring plaintiff from mentioning "police misconduct unrelated to the present case, including highly publicized incidents such as the deaths of Michael Brown and Laquan McDonald."). Many courts exclude evidence and argument referring to unrelated officer

involved shootings. *See, e.g. Ochana v. Flores,* 199 F. Supp. 2d 817, 831 (N.D. Ill. 2002), aff'd, 347 F.3d 266 (7th Cir. 2003) ("The court finds that any reference to recent publicized events concerning allegations of police misconduct would be unduly prejudicial, as it would distract the jury's attention from the conduct at issue").

Here, any evidence or argument concerning unrelated officer-involved shootings, or the Black/Blue Lives Matter movement, All Lives Matter Movement, or similar related issues, would be irrelevant, unfairly prejudicial, and improper character evidence. *See Kellom v. Quinn*, No. 17-11084, 2019 WL 4187353, at *12 (E.D. Mich. Sept. 4, 2019) (granting motion in limine precluding references to unrelated alleged law enforcement misconduct). There is no claim regarding nationwide police practices or training. Therefore, there is no factual or legal connection between nationally reported incidents and this case. The mention of unrelated officer-involved shootings and Black/Blue/All Lives Matter may trigger strong public reactions which could unfairly prejudice Bromley, Carthan and Williams.

Defendants' Motion is **GRANTED**.

**7. To exclude reference to the consent decree entered into between the City of Detroit and the Department of Justice, quarterly monitor reports and Detroit Police policies or training [ECF No. 68]**

In 2003, the City of Detroit entered into a consent decree with the U.S. Department of Justice concerning police department practices, training and policies. Defendants now ask the Court to prevent Slappy from introducing evidence of this consent decree as well as evidence of DPD training and policies. They say this evidence should be excluded because the City of Detroit is no longer a party, the evidence is not relevant, and would only confuse the issues and mislead the jury.

Slappy argues that district courts in this circuit do not categorically exclude this evidence.

As Defendants correctly point out, the City of Detroit is no longer a party. The existence or nonexistence of the consent decree does not inform any of the key issues remaining. Even if the consent decree has relevance as evidentiary background, its probative value is substantially outweighed by the risks of unfair prejudice and confusion. *Ross v. Am. Red Cross*, No. 2:09-CV-00905-GLF, 2012 WL 2004810, at *4 (S.D. Ohio June 5, 2012), aff'd, 567 F. App'x 296 (6th Cir. 2014). The Court precludes admission of the City of Detroit's consent decree.

With regard to police policies and procedures Plaintiff argues evidence relating to them should be admissible. In support, Slappy offers two cases: *Luna v. Bell,* No. 3:11-CV-00093, 2013 WL 12316066 (M.D. Tenn. Aug. 1, 2013) and *Alvarado v. Oakland Cnty.,* 809 F. Supp. 2d 680, 692 (E.D. Mich. 2011).

Both *Luna* and *Alvarado* stand for the proposition that in § 1983 police misconduct cases expert testimony regarding police policies and procedures "are appropriate subjects of expert testimony, provided that the experts do not express legal conclusions based on their interpretation of the application of those policies in a particular case." *Alvarado* at 692; *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908-09 (6th Cir. 2004). Both cases allowed expert witnesses to testify to police policies and procedures. This Court will allow such testimony as well.

Defendants' motion in limine is **GRANTED** with respect to the consent decree and **DENIED** with respect to DPD policies and procedures.

8. **To exclude reference to past or subsequent officer misconduct, citizen complaints, disciplinary histories, misconduct investigations, and administrative, legislative or judicial hearing transcripts or recordings and findings and judgements [ECF No. 69]**

The Court **GRANTS** Defendants' motion for the same reasons the Court granted ECF No. 67.

## 9. To prevent Plaintiff from requesting an award of punitive damages [ECF No. 70]

Defendants move to prevent Slappy from requesting punitive damages. They argue Slappy failed to prove that Defendants' conduct was either motivated by evil motive or intent, or that it involved reckless or callous indifference to Slappy's federally protected rights.

Punitive damages are available in a proper § 1983 action. *Smith v. Wade*, 461 U.S. 30, 35 (1983) (quotations omitted). A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Id*. at 56.

Count I of Slappy's complaint — First Amendment retaliation claim against Carthan, Bromley, and Williams — survived summary judgement. This count alone justifies the consideration of punitive damages. In *King v. Zamiara* the Sixth Circuit held:

> "[w]hen a defendant retaliates against a plaintiff's exercise of his First Amendment rights, the defendant necessarily acts with the purpose of infringing upon the plaintiff's federally protected rights. Thus, a defendant who has been found liable for First Amendment retaliation has engaged in conduct that warrants consideration of an award of punitive damages."

788 F.3d 207, 216 (6th Cir. 2015).

That ultimate question is yet to be determined by a jury. Precluding Slappy's punitive damage claims, while the First Amendment retaliation claim is still viable, is premature.

Defendants' motion to preclude plaintiff from presenting evidence to support his punitive damages claim is **DENIED**.

**10. To preclude Plaintiff from making "Golden Rule," "Community Consciousness" or "Send a Message" arguments [ECF No. 71]**

Defendants seek to preclude Slappy from making "Golden Rule," "Community Consciousness" or "Send a Message" arguments. They say these arguments are an improper appeal to passions and sympathies excluded by courts as prejudicial because they ask jurors to decide cases upon emotion and not objective evaluation.

Slappy concedes that "Golden Rule" arguments are improper and says he does not intend to make them. However, he does intend to use "community consciousness," or "send a message" arguments because a jury is the conscience of the community.

"Golden Rule" arguments are universally recognized as improper. *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020). And, asking jurors to place themselves in the victim's shoes, violates the ban on Golden Rule arguments. *Id.* at 1119. Closing arguments that encourage juror identification

with crime victims are also improper. *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008) (finding, "It could have been you. It could have been your children. It could have been any one of us," remarks to be improper closing argument). "Golden Rule" arguments tend to encourage the jury to make decisions based on personal interest and bias rather than on the evidence. *Hall*, at 1119. The Court will not allow Slappy to employ "Golden Rule" arguments.

With respect to "send a message" arguments, the Sixth Circuit addressed similar circumstances in *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir.1998). There, the plaintiff referred to the jury as "the voice of the community" and asked them to "tell" the defendants and "the world where you stand" and "your voice will be heard." *Id*. The *Strickland* court concluded that such arguments "can have no appeal other than to prejudice" and amount to an "'improper distraction from the jury's sworn duty to reach a fair, honest and just verdict." *Id*.

Finally, a prosecutor is permitted to make an appeal to the jury to act as the community conscious if it is not calculated to incite the passions and prejudices of the jurors. *U.S. v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).

Defendants' motion is **GRANTED** with respect to "Golden Rule" and "Send a Message" arguments and **DENIED** with respect to "Community Consciousness" arguments.

**11. To exclude argument regarding the value or importance of constitutional rights [ECF No. 72]**

Defendants argue that Slappy should be precluded from asserting an amount of damages based on the value or importance of the constitutional rights at stake. Any such evidence, they say, is irrelevant and the probative value is substantially outweighed by the risk of unfair prejudice because it asks the jury to make a determination of damages outside of those that may be recovered.

Slappy says he will not ask the jury to place a numerical value on the constitutional rights at issue. However, he intends in closing argument to stress the general importance of the constitutional rights at stake.

Damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (citing *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). However, mention of constitutional rights may be relevant both in determining liability for constitutional violations and to a punitive damage assessment. *See King*, at 213 ("reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages"). Additionally, courts afford counsel "great latitude in making opening and

closing arguments to the jury." *Niles v. Owensboro Med. Health Sys., Inc*., No. 4:09-CV-00061-JHM, 2011 WL 3205369, at *5 (W.D. Ky. July 27, 2011).

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion. Slappy may not ask the jury to assign a numerical value to the importance of abstract constitutional rights in any compensatory damages calculation, but Slappy is not precluded from asserting the importance of the jury's task to determine liability on constitutional questions.

### 12. To exclude reference to the code of silence [ECF No. 73]

Defendants' ask the Court to exclude any reference to the "code of silence" or "blue wall." They say mention of either term is unduly prejudicial and would constitute impermissible propensity evidence under Fed. R. Evid. 404. The Court agrees, in part.

Generalized allegations of a "code of silence" related to police personnel not involved in this case are not relevant and are akin to impermissible propensity evidence under Fed. R. Evid. 404. *Smith v. Garcia*, 2018 2018 WL 461230 (N.D. Ill. 2018); *see also Patterson v. Cty. of Wayne*, 259 F.R.D. 286, 291 (E.D. Mich. 2009) (granting motion in limine precluding reference to a police "code of silence"). Slappy will not be permitted to use the term "code of silence" or "blue wall."

But, district courts have permitted plaintiffs to develop the theme that a code of silence existed among the particular officers involved in the events underlying the complaint. *See Hillard v. City of Chicago*, 2010 WL 1664941, at *3 (N.D. Ill. Apr. 23, 2010). A witness' or party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias. *United States v. Abel*, 469 U.S. 45, 45–46 (1984).

To the extent Slappy focuses on officers Carthan, Williams and Bromley, he may explore the possibility that they are biased because of their loyalty to one another. *Ford v. Bell*, 2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012) (precluding "code of silence" references generally but allowing the plaintiffs to introduce evidence regarding bias with respect to the defendants in that case).

Defendants' motion in limine to exclude reference to the "code of silence" is **GRANTED**.

### 13. To exclude evidence, argument, or testimony implying malice regarding the absence of body-cam video at the hospital [ECF No. 74]

DPD policy generally prohibits the use of body worn cameras in hospital and emergency rooms. Defendants argue that Slappy's counsel may attempt to offer evidence or elicit testimony concerning the absence of

William's body-cam video at the hospital to show that there was a "cover-up" surrounding the details of Slappy's arrest. Defendants move to preclude argument by Slappy that Williams' failure to wear a body-cam in the hospital was in malice.

Slappy concedes there is no evidence that Williams wore a body camera on the day of the incident. He does not plan to suggest or imply any malice by the absence of such evidence.

The Court **GRANTS** Defendants' motion.

### 14. To exclude evidence or testimony regarding any alleged violation of DPD police manual provisions [ECF No. 75]

Defendants move for an order excluding evidence or testimony regarding any alleged violation of DPD manual provisions related to Slappy's detention. Defendants argue that a failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577. 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). They argue that presenting this evidence would be irrelevant, more prejudicial than probative, misleading to the jury, and confusing on the issues.

Slappy responds that each Defendants' state of mind is directly at issue and evidence of policy violations is relevant to establishing their state of mind. Slappy intends to discuss policies that demonstrate Defendants' had notice and knowledge of proper procedures regarding: arrest; transporting detainees/arrestee; lost persons; conveyances; and sick/injured detainees/arrestees. Despite their notice and knowledge, Slappy argues that Defendants violated DPD policies. He says Defendants' failure to follow policies demonstrates deliberate indifference and shows willful and wanton misconduct, which may establish punitive damages.

Defendants' alleged failure to follow DPD police manual provisions may establish deliberate indifference. Moreover, case law does not categorically exclude evidence of the violation of administrative rule or policy. *Luna*, 2013 WL 12316066 at *6, n.3; *Alvarado v. Oakland County*, 809 at 680 (E.D. Mich. 2011). Although violation of a rule or policy does not determine constitutional law, it may be relevant to whether a defendant acted within constitutional bounds. *Luna*, 2013 WL 12316066 at *6, n.3.

The Court **DENIES WITHOUT PREJUDICE** Defendants' motion.

**15.    To exclude reference to opposing counsel's former career in law enforcement, government, or personal Experience with Police [ECF No. 76]**

Defendants seek to preclude Plaintiff's attorneys from discussing their former careers in law enforcement, government, or their personal experiences with police because it would improperly infer to the jury that counsel possesses specialized knowledge, and would amount to an invitation to ask the jury to decide the case based on emotional reactions rather than objective evidence in violation of Fed. R. Evid. 403. Mr. McNeal is a former city attorney; Mr. Robinson is a former DPD officer.

Slappy points out that Defendants provide no case law in support of their position that reference to former law enforcement careers, government careers, or personal experiences with police are improper topics. He asks the Court to deny the motion.

Courts generally afford great latitude in opening statements and closing arguments. *Niles v. Owensboro Med. Health Sys., Inc.*, 2011 WL 3205369 at *5 (W.D. Ky., July 27, 2011).

The Court **DENIES** Defendants' motion. The Court will instruct the jury that the "statements and arguments made by the lawyers are not evidence…" and that "what [the lawyers] have said in their opening statement, closing arguments, and at other times is intended to help [them]

to understand the evidence, but is not evidence." *See* Devitt and Blackmar §

130:30. But, the Court cautions Mr. McNeal and Mr. Robinson to keep their

references to a minimum due to the risk of presenting themselves to the jury

as experts with specialized knowledge.

### 16. To exclude evidence or testimony regarding any judge or jurors' opinion or comments concerning the truth or falsity of plaintiff's claim [ECF No. 77]

Slappy was a party in multiple criminal trials related to the incidents

underlying his claims in this case. Defendants move to exclude Slappy from

introducing testimony, evidence, opinions, or comments from the judges and

jurors involved in those criminal cases as a violation of Fed. R. Evid. 403.

Slappy does not object.

The Court **GRANTS** Defendants' motion.

### 17. To exclude evidence or testimony allocating fault to Officer Eric Bromley [ECF No. 78]

Defendants asks the Court to exclude evidence or testimony allocating

fault to Bromley because it would not pass Fed. R. Evid. 403. Defendants

argue that Bromley was not the arresting officer.

Slappy argues that Defendants' motion is merely a rephrased motion

for summary judgment and the time for filing such dispositive motions has

closed.

On summary judgment, the Court considered this issue. [ECF No. 50]. It held that questions of fact remain as to whether Bromley was the arresting officer.

The Court agrees with Slappy and **DENIES** Defendants' motion.

**18.    To preclude Plaintiff from seeking damages as to Defendants Eric Bromley and Eric Carthan beyond the time of his Second Arrest [ECF No. 79]**

Defendants ask the Court to preclude Slappy from providing testimony or evidence allocating damages to Carthan and Bromley beyond the time of Slappy's second arrest. Defendants contend Slappy's damages, if any, only flow from the second arrest because he was released from custody by Carthan and Bromley.

Slappy says the emotional and psychological damages he sustained are not separable from one arrest to the other. The Court agrees.

Slappy's emotional, physical, or psychological injuries could have been caused by one of or all the officers he interacted with on January 12, 2017. To what extent each officers' actions caused his injuries is a routine question the jury will be asked to answer. M Civ JI 15.03 is the appropriate jury instruction to give. The notes portion of this jury instruction explains, "[i]t is prejudicially erroneous for jury instructions on proximate cause to refer to "the proximate cause" instead of "a proximate cause" in cases in which it is

an issue whether there was more than one proximate cause." *Kirby v Larson*,

400 Mich 585, 600–607; 256 NW2d 400, 408–411 (1977).

Defendants' motion is **DENIED**.

## IV. CONCLUSION

With respect to the motions in limine discussed above, these are the

dispositions:

Plaintiff's motion:

1. To preclude dismissed and settled claims [ECF No. 62]: **DENIED**.

2. To preclude reference to Plaintiff's recorded force investigation and citizen complaint [ECF No. 63]: **DENIED**.

3. To preclude prejudicial and irrelevant questions and answers [ECF No. 64]: **GRANTED**.

4. To preclude testimony from Raymond Diaz/Sara Schulz and to preclude admission of their "Police Photographs" [ECF No. 65]: **DENIED WITHOUT PREJUDICE.**

Defendants' motion:

5. To exclude references to officer representation and indemnification [ECF No. 66]: **GRANTED WITHOUT PREJUDICE**.

6. To exclude reference to newspaper articles and other media reports or TV broadcasts regarding unrelated incidents involving allegations of police misconduct , protests, civil unrest, "Black Lives Matter," "All Lives Matter," "Blue Lives Matter," George Floyd, or police perceptions generally [ECF No. 67]: **GRANTED**.

7. To exclude reference to the consent decree entered into between the City of Detroit and the Department of Justice, quarterly monitor reports and Detroit Police policies or training [ECF No. 68]: **GRANTED** with respect to the consent decree; **DENIED** with respect to Detroit Police Department policies and procedures.

8. To exclude reference to past or subsequent officer misconduct, citizen complaints, disciplinary histories, misconduct investigations, and administrative, legislative or judicial hearing transcripts, or recordings and findings and judgements [ECF No. 69]: **GRANTED**.

9. To prevent Plaintiff from requesting an award of punitive damages [ECF No. 70]: **DENIED**.

10. To preclude Plaintiff from making "Golden Rule," "Community Consciousness," or "Send a Message" Arguments [ECF No. 71]: **GRANTED** with respect to "Golden Rule" and "Send a Message" arguments; **DENIED** with respect to "Community Consciousness arguments.

11. To exclude argument regarding the value or importance of constitutional rights [ECF No. 72]: **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may not ask the jury to assign a numerical value to the importance of abstract constitutional rights in the compensatory damages calculation, but Plaintiff is not precluded from referencing the importance of the jury's task in determining liability on constitutional questions.

12. To exclude reference to the code of silence [ECF No. 73]: **GRANTED**.

13. To exclude evidence, argument, or testimony implying malice regarding the absence of body-cam video at the hospital [ECF No. 74]: **GRANTED**.

14. To exclude evidence or testimony regarding any alleged violation of DPD police manual provisions [ECF No. 75]: **DENIED WITHOUT PREJUDICE**.

15. To exclude reference to opposing counsel's former career in law enforcement, government or personal experience with police [ECF No. 76]: **DENIED**.

16. To exclude evidence or testimony regarding any judge or jurors' opinion or comments concerning the truth or falsity of Plaintiff's claim [ECF No. 77]: **GRANTED**.

17. To exclude evidence or testimony allocating fault to Officer Eric Bromley [ECF No. 78]: **DENIED**.

18. To preclude Plaintiff from seeking damages as to Defendants Eric Bromley and Eric Carthan beyond the time of his second arrest [ECF No. 79]: **DENIED**.

Finally, counsel must revise the Joint Final Pretrial Order based on the above rulings and any other changes agreed upon by the parties. They must also attempt greater agreement on Plaintiff's exhibits. The revised joint final pretrial order shall be submitted to the Court no later than Monday, July 26, 2021.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 15, 2021